DECISION. *Page 2 
{¶ 1} In this slip-and-fall case, plaintiffs-appellants June Martin and Edward Martin appeal the entry of summary judgment in favor of defendants-appellees The Christ Hospital and John Doe. June's (we use first names because of the same last name) complaint asserted that Christ Hospital had negligently maintained its premises, causing her to fall. In granting summary judgment, the trial court concluded that Christ Hospital was entitled to judgment as a matter of law because the rug that June had slipped and fallen over was open and obvious. We affirm.
 I. The Fall {¶ 2} June was visiting her mother at Christ Hospital on a sunny day in May of 2003. As she stepped through the door from the parking garage, she tripped and fell over a rug that had bunched up inside the entryway.
 {¶ 3} For two weeks, June had visited her mother on numerous occasions and was admittedly very familiar with the surroundings. On the day of the accident, June parked on the top level of the parking garage, and she and her sister walked towards the entrance together. The entryway into Christ Hospital was also on the top of the parking garage. June was carrying her purse over her shoulder, two Mountain Dew bottles, and a bag of fast food. On arriving at the door, June took off her sunglasses, "opened the door, stepped in, and tripped over the rug." June fell and landed on her hands and knees. After falling, June noticed that the rug at the entrance was bunched up, wrinkled, and pushed together. As a result of the fall, June suffered carpet burns on her hands and knees. June conceded that the rug was *Page 3 
in plain view, and that when she entered she was looking inward and straight ahead at the time she walked onto the rug.
 {¶ 4} June reported the incident to a hospital employee who was seated behind the service desk. The man advised June that he was aware of the bunched-up rug, and that he had already sent another employee to fix it — the record does not reveal how much time had passed between when the hospital was put on notice of the rug's condition and when the rug was actually fixed. The employee sent June to the emergency room, where she was released about 15 minutes later. Emergency-room personnel did not perform any tests or x-rays on June.
 {¶ 5} About a week after the fall, June visited Dr. Babar regarding the fall. Babar ordered x-rays, EKGs, and CAT scans. Babar diagnosed June with ruptured disks, herniated disks, and bone spurs. Babar's diagnosis did not mention the wrist and knee injuries June had sustained as a result of her fall. Babar referred June to another doctor who told her that she would have to undergo back and neck surgery to fix a missing disk, and that arthritis was beginning to set in.
 {¶ 6} June sued Christ Hospital, seeking damages for her personal injuries. She also brought a loss-of-consortium claim on behalf of her husband, Edward Martin.
 {¶ 7} When asked if the injuries were a congenital defect or a recent development, June answered, "[I]t is [a recent development] — over the period of the injury." She also testified that her doctor had informed her that her back problems were caused by the fall, and that the problems were not the result of anything else. She had fallen three times, once in May 2003 at Christ Hospital, a second time in 2004, at Bobby Duggins's, fracturing her tailbone — she sued him as well — and a third time in January 2006 in a Kroger parking lot, "scuffing up her hands and stuff." *Page 4 
June had scheduled a doctor's appointment about two weeks after her deposition regarding the Kroger fall.
 {¶ 8} After partial discovery, Christ Hospital moved for summary judgment. The trial court granted Christ Hospital's summary-judgment motion, ruling that there were no disputed material facts and that summary judgment in Christ Hospital's favor was appropriate because the rug was open and obvious.
 {¶ 9} Before analyzing June's assignments of error, we note that a summary-judgment decision is reviewed de novo.[1] When evaluating a decision granting summary judgment, we construe the evidence in a light most favorable to the non-moving party, in this case June.[2]
 {¶ 10} Here, Christ Hospital was entitled to summary judgment if (1) there was no genuine issue of material fact; (2) it was entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in June's favor and that conclusion was adverse to her.[3]
 {¶ 11} The summary-judgment standard placed the burden on Christ Hospital as the moving party to identify "those portions of the record that demonstrate[d] the absence of a genuine issue of material fact on the essential elements of [June's] claims."[4] Once the moving party discharges that burden, the nonmoving party then has "a reciprocal burden to set forth specific facts by the means listed in Civ.R. 56(E) to show that a triable issue of fact exists."[5] *Page 5 
 II. The Open-and-Obvious Doctrine {¶ 12} In any negligence claim, the plaintiff must establish (1) that the defendant had a duty to protect the plaintiff from injury, (2) that the defendant breached its duty, and (3) that the breach of that duty proximately caused the plaintiff's injury.[6]
 {¶ l3} Though this author, at least, believes that the "open and obvious" doctrine is an historical relic and is subsumed in comparative negligence,[7] the Ohio Supreme Court continues to follow it.[8] So we must also.
 {¶ 14} Generally, property owners owe business invitees both a duty of ordinary care in maintaining the premises in a reasonably safe condition and a common-law duty to warn of latent or hidden dangers.[9] "The existence of a duty is fundamental to establishing actionable negligence, without which there can be no legal liability."[10]
 {¶ 15} The trial court entered summary judgment because the rug in question was open and obvious. Under the open-and-obvious doctrine, property owners have no duty to warn an invitee of hazardous conditions that are open and obvious.[11] The open-and-obvious doctrine arises from the common-law duty to warn of latent and hidden dangers, and when applicable, it obviates the owner's duty to warn and acts as a complete bar to any negligence claims.[12] The underlying rationale *Page 6 
is that the open and obvious nature of the hazard itself serves as a warning.[13] The doctrine applies where the invitee has the opportunity to observe and perceive (appreciate) the dangerous condition in order to avoid it. The doctrine makes it reasonable for a property owner to expect that invitees entering the premises will discover those dangers and take the appropriate measures to protect themselves.[14]
 {¶ 16} In this case, if the open-and-obvious doctrine applied then the first element of June's negligence claim, that Christ Hospital had a duty to protect her from injury, could not be established. Whether Christ Hospital owed June a duty of care to protect against open and obvious dangers was a determination for the trial court as a matter of law and was therefore a proper basis for summary judgment.
 {¶ l7} In support of its summary-judgment motion, Christ Hospital submitted the affidavit of Rick Perkinson, Divisional Director of Facilities Management at Christ Hospital. Perkinson's affidavit stated that (1) the entryway door was constructed of translucent grey tint-tempered glass; (2) approaching persons were able to see the ground on the opposite side of the threshold; and (3) the door opened outward toward the parking lot. Christ Hospital also argued that June knew of the potential hazard because she had been visiting the hospital and using the same route for two weeks before she fell; and that there was ample opportunity for June to observe the rug before entering. Christ Hospital further showed that there were no other persons in the area to distract or obstruct June's view of the rug, and that the rug in question was a large, black-rubber rug that stood in stark contrast to the turquoise carpet of the entryway on which it was situated. *Page 7 
 {¶ 18} June countered that the open-and-obvious doctrine did not apply because she did not have an opportunity to observe the dangerous condition and protect herself from it. Her argument was that the rug was not open and obvious because the door blocked her view of the area where the rug was located, and that immediately after opening the door and stepping in, she tripped.
 {¶ 19} June also argued that the attendant circumstances militated against the application of the open-and-obvious doctrine. In essence, she argued that carrying her purse, drinks, and a fast-food bag, in combination with the external environmental factors (the sunny day and having to take off her sunglasses while not having enough time for her eyes to adjust) weighed against the application of the open-and-obvious doctrine. Attendant circumstances can, in some instances, create an issue of material fact and may be considered when analyzing whether a danger was open and obvious.[15]
 {¶ 20} Two cases are instructive. In Smock v. Bob Evans Farms,Inc., a floor mat whose corner was curled up was an open and obvious hazard where the lobby was well lit and nothing obstructed the invitee's view.[16] But in Miller v. Beer Barrel Saloon, the danger was not open and obvious where the room was poorly lit, the mat was the same color as the floor, and the invitee had not previously traversed the area where she had tripped over the mat.[17]
 {¶ 21} This case more closely resembles Smock than Miller. The door leading into the entryway was translucent, and after June opened the door (outward), the rug was right in front of her. There was no evidence to suggest that the entryway was *Page 8 
anything but well lit, and June testified that nothing had obstructed her view and that she had used this same entrance multiple times. Finally, the rug and the carpet were not the same color. The rug was black and the carpet was turquoise. And, under these facts we are not convinced that June's self-imposed burden of carrying food, drinks, and a purse provided attendant circumstances sufficient to obviate application of the open-and-obvious doctrine. Christ Hospital's duty to warn could not be heightened by an invitee's carelessness — and ordinary observation would have revealed the hazard. "Where the hazardous condition is not hidden from view or concealed and is discoverable by ordinary inspection, the court may properly sustain a summary judgment against the claimant."[18] We hold that the Christ Hospital owed no duty to June to warn of the rug because it was an open and obvious hazard.
 {¶ 22} The evidence in the record showed that the rug was visible through the door and that the color of the rug did not match the color of the carpet on which it lay. In this case, reasonable minds could only conclude that the defective rug was discoverable through ordinary inspection so that Christ Hospital could have reasonably expected its invitees to discover the danger and take appropriate actions to protect themselves. Accordingly, we affirm the summary judgment entered in Christ Hospital's favor.
Judgment affirmed.
HILDEBRANDT and SUNDERMANN, JJ., concur.
[1] See Hollingsworth v. Time Warner Cable, 157 Ohio App.3d 539, 546,2004-Ohio-3130, 812 N.E.2d 976, citing Doe v. Shaffer,90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243.
[2] See Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 375 N.E.2d 46.
[3] See Hollingsworth, supra, citing Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.
[4] See id., quoting Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264; see, also, Civ.R. 56(C).
[5] See id., quoting Morris v. Ohio Cas. Ins. Co. (1988),35 Ohio St.3d 45, 47, 517 N.E.2d 904.
[6] See Williams v. 312 Walnut Ltd. Partnership (Dec. 31, 1996), 1st Dist. No. C-960368, citing Keister v. Park CentreLanes (1981), 3 Ohio App.3d 19, 22-24, 443 N.E.2d 532.
[7] See Shepherd v. Cincinnati, 168 Ohio App.3d 444, 2006-Ohio-4286,860 N.E.2d 808, at ¶ 27; Robinson v. Bates, 160 Ohio App.3d 668,2005-Ohio-1879, 828 N.E.2d 657, at ¶ 18.
[8] See Armstrong v. Best Buy Co., 99 Ohio St.3d 70, 2003-Ohio-2357,788 N.E.2d 1088
[9] See Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203,480 N.E.2d 474. See, also, Robinson v. Bates, 112 Ohio St.3d 17,2006-Ohio-6362, 857 N.E.2d 1195, at ¶ 21.
[10] See Collins v. McDonald's Corp., 8th Dist. No. 83282, 2004-Ohio-4074, citing Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142, 539 N.E.2d 614.
[11] See Johnson v. Marc Glassman, Inc., 11`. No. 2005-L-107,2006-Ohio-1790, at ¶ 19.
[12] See Armstrong, supra, 99 Ohio St.3d 70, at ¶ 5.
[13] See Simmers v. Bentley Constr. Co. (1992), 64 Ohio St.3d 642,644, 597 N.E.2d 504.
[14] Id.
[15] See Henry v. Dollar General Store, 2nd Dist. No. 2002-CA-47, 2003-Ohio-206, at ¶ 14. See, also, Quinn v. Montgomery Co.Educ. Serv. Ctr., 2nd Dist. No. 20596, 2005-Ohio-808, at ¶ 23.
[16] 9th Dist. No. 02-CA-008075, 2003-Ohio-832.
[17] (May 24, 1991), 6th Dist. No. 90-OT-050.
[18] See Parsons v. Lawson Co. (1989), 57 Ohio App.3d 49, 50-51,566 N.E.2d 698. See, also, Smock, supra. *Page 1